## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **JOSEPH B. SCHANEVILLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-01038** |
| | ) | **Judge Aleta A. Trauger** |
| **PUBLIX SUPER MARKETS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is plaintiff Joseph B. Schaneville's Motion for Leave to File First Amended Complaint. (Doc. No. 34.) For the reasons set forth herein, the motion will be granted.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Schaneville, who is now a resident of Madisonville, St. Tammany Parish, Louisiana, was employed by defendant Publix Super Markets, Inc. (Publix) as a full-time pharmacist at various Publix stores located in Murfreesboro, Tennessee, from September 2009 until his termination on October 8, 2018. (Doc. No. 1 ¶¶ 2, 9, 12.)

Schaneville filed his initial Complaint in the United States District Court for the Northern District of Florida, the judicial district in which Publix's corporate headquarters are located, on October 22, 2020, asserting two claims for relief: (1) a claim for discriminatory termination based on age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 12201 *et seq.* and (2) a claim for failure to reasonably accommodate in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* The original Complaint alleges that Schaneville had been diagnosed with plantar fasciitis, and this diagnosis provides the basis for his ADA failure-to-accommodate claim. (Doc. No. 1 ¶¶ 24–30.)

The initial Complaint alleges facts relating to exhaustion of administrative remedies. Specifically, it states that Schaneville filed his charge of age discrimination with the Equal Employment Opportunity Commission (EEOC) on April 2, 2019 and that the EEOC issued a Notice of Right to Sue on August 21, 2020. (*Id.* ¶ 6.)

Shortly after Schaneville filed the original Complaint in the Northern District of Florida, Publix filed an Answer and a Motion to Transfer Venue. (Doc. Nos. 8, 9.) On December 2, 2020, the Florida district court granted the Motion to Transfer Venue and transferred the case to this court, on the grounds that all the relevant acts and omissions giving rise to the plaintiff's claims had taken place within this judicial district. (Doc. No. 14.) Both parties promptly retained new counsel upon transfer of the matter to this court. (*See* Doc. Nos. 16, 22.)

Shortly after transfer, this court scheduled an initial case management conference. In the proposed Initial Case Management Order submitted jointly by the parties and later entered by the court, the plaintiff signaled his intention to file an Amended Complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "clarifying" his claims and adding new claims under the ADA, including claims for failure to accommodate reasonable requests for accommodations of disabilities, including a serious heart condition in addition to plantar fasciitis, retaliation for requesting reasonable accommodations, and discriminatory discharge on the basis of disabilities. (Doc. No. 32, at 1–2.) He also signaled his intention to assert a claim under the Family and Medical Leave Act (FMLA), based on the defendant's willful, reckless, or intentional interference with his rights under the FMLA or retaliating against him for exercising rights under the FMLA. (Doc. No. 32, at 1–2.) The defendant, for its part, signaled an intention to oppose any such amendment on the basis of futility, among other possible grounds. (*Id.* at 2.) The Initial Case Management Order set a deadline of April 26, 2021 for filing motions to amend pleadings. (*Id.* at 3.) After the

defendant declined to consent to the proposed amendment, the plaintiff filed the present Motion for Leave to Amend on April 22, 2021—within the deadline set by the Initial Case Management Order—along with a supporting Memorandum and proposed First Amended Complaint (FAC). (Doc. Nos. 34, 35, 34-1.)

The FAC asserts the same two claims as the original Complaint: discriminatory termination in violation of the ADEA and failure to reasonably accommodate in violation of the ADA. (Doc. No. 34-1, "First Count" and "Third Count.") In addition, as anticipated, it asserts new claims for (1) discriminatory termination because of a disability, in violation of the ADA (*id.*, "Second Count"); (2) retaliation in violation of the ADA (*id.*, "Fourth Count"); and (3) "willful violations of the FMLA" (*id.*, "Fifth Count"). In support of the ADA claims, the FAC incorporates new facts relating to Schaneville's alleged disabilities, including allegations that he suffered from a serious heart condition of which his employer was aware and that he was discharged "because of an actual or perceived impairment," including his heart condition as well as his plantar fasciitis. (Doc. No. 34-1 ¶¶ 13, 42.)

As also anticipated, the defendant opposes the motion. (Doc. No. 38.) The plaintiff has filed a Reply. (Doc. No. 39.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(1) provides that a party can amend its pleading once "as a matter of course" under limited circumstances. Rule 15(a)(2) applies "[i]n all other cases," and it provides that a party may amend "only with the opposing party's written consent or the court's leave." Such leave should be freely given "when justice so requires." *Id.* Rule 15(a)(2) "embodies a 'liberal amendment policy.'" *Brown v. Chapman*, 814 F.3d 436, 442–43 (6th Cir. 2016) (citation omitted).

To determine whether to grant leave under this liberal policy, courts typically weigh several factors, including "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (citation omitted). Generally, futility provides an independent basis for dismissal when any claims sought to be added "could not survive a motion to dismiss" under Rule 12(b)(6). *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

To withstand a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that offer only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," will not do. *Twombly*, 550 U.S. at 555.

## III.    DISCUSSION

The defendant argues that the Motion to Amend should be denied as unable to withstand a Rule 12(b)(6) motion to dismiss, because: (1) the plaintiff failed to exhaust his administrative remedies with regard to the ADA discriminatory discharge and retaliation claims; (2) the proposed FAC fails to adequately plead facts that, if true, would establish a claim of willful violation of the FMLA, as a result of which the claim is clearly barred by the two-year statute of limitations that applies to FMLA claims that are not "willful." (Doc. No. 38, at 1–2.) In the alternative, the defendant argues that the motion should be denied on the grounds of undue delay.

### A.    Whether the Proposed ADA Claims Would Be Futile

#### 1.    *Legal Standards*

Exhaustion of administrative remedies is a condition precedent to bringing suit claiming a

violation of the ADA. *Terre v. Hopson*, 708 F. App'x 221, 226 (6th Cir. 2017) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)). "[F]ailure to properly exhaust is an appropriate basis for dismissal of an ADA action." *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 492 (6th Cir. 2018) (citation omitted). To properly exhaust administrative remedies under the ADA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination and then obtain a right-to-sue letter from the EEOC. *Id.* at 492–93 (citations omitted).

A claimant generally may not bring claims in a lawsuit that were not included in his EEOC charge. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* (quoting 29 C.F.R. § 1601.12(b)). "At the same time, because aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Younis*, 610 F.3d at 362 (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006)); *see also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) ("[T]he general rule in this circuit [is] that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." (citation omitted)). Thus, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Id.* (quoting *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998)).

### 2. *Additional Facts Relating to Exhaustion*

Publix discharged Schaneville on October 8, 2018. On November 6, 2018, Schaneville submitted an "Online Inquiry Information" form to the EEOC with detailed information about his

claims. (Doc. No. 34-2, at 4 (EEOC Activity Log); Doc. No. 34-3 (Inquiry Information Form).)

Substantively, the plaintiff noted on the form that he has a disability, and he described the "Adverse

Action(s)" in some detail, including that he had "requested accommodations several times after

being diagnosed with blockage of coronary artery and also plantar fasciitis," and that he was "out

on sick leave in August and took a scheduled vacation in September and fired a week after that."

(Doc. No. 34-3, at 3.)

The plaintiff's intake appointment with the EEOC took place on April 2, 2019. On that

date, the "Inquiry status was changed to PRE-CHARGE," and, according to the plaintiff, the

EEOC drafted a Charge of Discrimination ("Charge" or "EEOC Charge") for Schaneville and

emailed it to him. The same day, Schaneville digitally signed the Charge, without making any

changes, and the EEOC filed it for him. (Doc. No. 34-4.)

On the Charge, the boxes for discrimination based on age and disability are checked. The

box for retaliation is not checked. (*Id.* at 1.) The narrative description of the plaintiff's claims

states:

> I was subjected to age-based comments from the District Pharmacy Manager. I was
> told that I should take early Medicare. In August 2018, I was required to wear an
> air cast and requested a transfer to a store where I was not required to climb a ladder
> or to work a reduced work week. My accommodation request was denied. I went
> on Vacation at the end of September and was fired a week after I returned to work.
> I was replaced by a younger individual in their 20s. When I begin [sic] working for
> the employer, there were several older pharmacists. After the current District
> Pharmacy Manager became supervisor, the older pharmacists have been fired or
> forced out by transferring to difficult locations. I feel that individuals over the age
> of forty have been discriminated against as a class.
>
> I believe that I have been discriminated against because of my age (61) in violation
> of the [ADEA] and my disability in violation of the [ADA].

(Doc. No. 34-3, at 1.) The Charge does not include a precise description of the alleged disability.

Schaneville was not represented by counsel at the time his charged was filed.

The court understands the Motion for Leave to Amend as arguing, first, that the new claims in the FAC are administratively exhausted, because the definition of "charge of discrimination" adopted by the Supreme Court and delineated by the Sixth Circuit is sufficiently broad to include, under the particular facts of this case, the Inquiry Information form completed by Schaneville. That form, the plaintiff argues, clearly alleges facts that would support a claim of ADA discriminatory termination and retaliation and should be construed in conjunction with Schaneville's formal Charge of Discrimination. In the alternative, the plaintiff argues that the new claims are exhausted, because the facts set forth in the formal Charge, standing alone, would and should have prompted the EEOC to investigate claims of ADA discriminatory discharge and retaliation. The defendant argues that the claims are not exhausted and also contends that the circumstances presented here do not warrant liberal construction of the Charge.

3.    *Exhaustion of the ADA Discriminatory Termination Claim*

Keeping in mind that the plaintiff was unrepresented when he filed the Charge and that the law clearly requires that an EEOC charge be broadly construed in the light most favorable to the plaintiff, the court finds that the Charge of Discrimination in this case alleges facts that should have prompted the EEOC to investigate an ADA discriminatory termination claim. The Charge alleges, as set forth above, that the plaintiff suffered from unspecified disabilities and that his request for an accommodation was denied. Shortly thereafter, he went on vacation and then was fired immediately upon his return from work. He concludes: "I believe that I have been discriminated against because of my age . . . and my disability." (Doc. No. 34-3, at 1.)

The elements of a *prima facie* case of ADA discriminatory discharge are that (1) the employee is disabled; (2) the employee was otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the defendant knew or had reason to know of the disability; and (5) the job remained open or the plaintiff was

replaced by someone outside his protected class. *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999). A *pro se* claimant is obviously not required to plead each of these elements in an EEOC charge, but the fact that Schaneville's Charge alleges that his employment was terminated shortly after he requested (and was denied) an accommodation should have prompted the EEOC to investigate whether the termination was causally related to his disability. Moreover, the allegations in the Charge were sufficient to put the defendant on notice of such a claim.

The facts alleged in the Charge make this case distinguishable from *Jones v. Sumser Retirement Village*, 209 F.3d 851 (6th Cir. 2000), on which the defendant relies. There, the Sixth Circuit found that the plaintiff's EEOC charge did not "explicitly allege . . . fail[ure] to accommodate [plaintiff's] disability," nor would "such a claim . . . reasonably grow out of the facts and claims she asserted," specifically an ADA discriminatory discharge claim. *Id.* at 853. The court stated that a "termination claim differs in kind and date from an accommodation claim" and noted that the facts necessary to support such claims are different, as are the dates on which the adverse actions occur. *Id.* at 854. The EEOC charge did not allege any facts relating to a failure to accommodate, and the only date referenced on the charge was the date on which the termination occurred. As a result, in that case, an accommodation claim did not "grow out of" the investigation of the plaintiff's termination claim. *Id.*

In this case, conversely, the Charge alleges a date range from June 6, 2018 through October 18, 2018 as the earliest and latest dates on which discrimination took place, a span encompassing the dates on which Schaneville allegedly requested accommodations and the date of his termination. In addition, the Charge alleges facts to support a failure to accommodate and states that the plaintiff was discharged after making a request for an accommodation. An investigation

into the discharge after the plaintiff's request for an accommodation should have grown out of these allegations.

The court also rejects the defendant's argument that, because the plaintiff was unrepresented for only a short period of time, liberal construction of the EEOC charge in this case is not warranted. The Sixth Circuit has repeatedly held that "the fact that [courts] liberally construe EEOC charges filed by *pro se* complainants 'does not mean that a broad reading may not, or should not, be given in cases where a plaintiff has counsel.'" *Spengler v. Worthington Cylinders*, 615 F.3d 481, 490 (6th Cir. 2010) (quoting *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 536 (6th Cir. 2001)). In this case, the plaintiff was not represented when the Charge was drafted, and the fact that he subsequently retained counsel does not call for a more exacting construction of it.

Finally, the court also finds, at this juncture, that the plaintiff should not be precluded from including new allegations of a heart condition, of which the defendant was aware, in connection with his ADA claims. As the plaintiff points out, the EEOC Charge does not specifically allege the type of disability the plaintiff allegedly has or is perceived to have, whether plantar fasciitis or anything else, and the plaintiff has presented a statement from the EEOC indicating that its practice is not to place a claimant's disability on the face of the charge. (Doc. No. 39-1, at 1 (March 2, 2021 email from P. Bornefeld).) Accordingly, the court finds that the mere fact that the Charge itself does not reference the plaintiff's heart condition does not provide a basis for not allowing him to amend the pleading to reference it.

The court finds, in sum, that the ADA discriminatory termination claim is administratively exhausted, without the need to consider the Inquiry Information Form. The amendment of the Complaint to add this claim would not be futile.

### 4. Exhaustion of the ADA Retaliation Claim

There is no dispute that the plaintiff did not check the box for "retaliation" on the Charge of Discrimination. "[U]nder normal circumstances, the failure to check the appropriate box on an EEOC charge will deprive" the plaintiff of an ability to bring the claim in federal court, based on the failure to exhaust the claim. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 832 (6th Cir. 1999).[1] However, in light of the rule that EEOC charges are to be liberally construed, the operative question, as the court recognized in *Duggins*, is whether the plaintiff "related facts to the EEOC which would have prompted an investigation into retaliation." *Id.* at 832; *see Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998) ("[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim.").

In *Duggins*, in addition to her EEOC charge, the plaintiff had submitted an "internal affidavit" to the EEOC, which "clearly raised allegations of retaliation." *Duggins*, 195 F.3d at 832. The court concluded:

> Where the plaintiff alleged facts to the EEOC which clearly included retaliation allegations, even though those facts were relayed through an affidavit, and where that plaintiff was not represented by legal counsel in writing her one-page EEOC charge, such a plaintiff should not be precluded from bringing a retaliation claim in the complaint.

*Id.* at 833; *accord Dixon v. Ashcroft*, 392 F.3d 212, 218 (6th Cir. 2004) (applying the "expected scope of investigation test," finding that the plaintiff alleged sufficient facts in his EEOC charge to put the agency on notice of his retaliation claim, even though he failed to check the box signaling

---

[1] *Duggins* actually states that this failure will "deprive a court of jurisdiction to hear a claim." 195 F.3d at 832. The Supreme Court has since clarified that the exhaustion requirement is merely a "mandatory claim-processing rule" rather than a jurisdictional requirement. *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1850–51 (2019).

an intent to state a claim based on retaliation); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir.2002) ("[T]he general rule in this circuit . . . is that the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." (internal quotation marks and citations omitted)).

In this case, the plaintiff's communication with the EEOC includes the Inquiry Information form, through which the plaintiff informed the EEOC that his requests for accommodations related to the blockage of a coronary artery and plantar fasciitis were denied and that he was "out on FMLA leave for 10 days," took a planned vacation shortly after that, and then was terminated one week after his return from vacation. (Doc. No. 34-3, at 3.) *Duggins* suggests that the court may consider this form in conjunction with the actual Charge, as it shows that the plaintiff "alleged facts to the EEOC which clearly included retaliation allegations." *Duggins*, 195 F.3d at 833.

However, as with the discriminatory discharge claim, even if the court does not consider the Inquiry Information form, the EEOC charge itself, standing alone, alleges facts sufficient to have put the EEOC and the defendant on notice of a retaliatory discharge claim—namely, that the plaintiff was discharged shortly after he engaged in activity protected by the ADA by requesting accommodations for an alleged disability. At this early stage in the proceedings and, again, given that the plaintiff was unrepresented at the time, these allegations should have been sufficient to cause the EEOC to investigate a claim of ADA retaliation.

Consequently, the court finds that this claim, too, is administratively exhausted, and amending the pleading to add this claim would not be futile.

### B. Whether the FMLA Claim Would Be Time-Barred

Generally, an FMLA claim must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). If the claim alleges a *willful* violation of the FMLA, however, it may be brought "within 3 years

of the date of the last event constituting the alleged violation for which the action is brought." *Id.* § 2617(c)(2). There is no dispute that the original Complaint was filed more than two years—but less than three years—after the date of the plaintiff's termination. As a result, claims for non-willful violations are clearly time-barred, but, if the FAC states a viable claim for a *willful* violation, the claim would not be time-barred.

The plaintiff seeks to amend his pleading to assert a claim under the FMLA. He argues that adding this claim would not be futile because (1) there is no requirement that such a claim be administratively exhausted; and (2) his FMLA claim is based on a willful violation of the statute, the statute of limitations for which is three years, and his lawsuit was filed within three years from the date of his discharge.

The defendant argues, in response, that a claim for a willful violation under the FMLA would necessarily be subject to dismissal, because the FAC does not adequately plead facts showing that (1) Publix denied the plaintiff FMLA leave to which he was entitled, much less that it willfully interfered with any such FMLA leave; and (2) Schaneville's allegations that Publix "willfully refused to provide Mr. Schaneville required notices of his FMLA rights to . . . intermittent leave" are insufficient because Publix never denied him leave to which he was entitled. (Doc. No. 38, at 16 (quoting Doc. No. 34-1 ¶ 63).) In his Reply, Schaneville does not attempt to refute that argument. Instead, he argues that the FAC adequately pleads facts showing that he was fired in retaliation for exercising his right to take FMLA leave and that Publix does not address that claim. Schaneville further argues that retaliation, by definition, is willful.

A plaintiff may establish an FMLA violation through an entitlement/interference theory

under 29 U.S.C. § 2615(a)(1) or a discrimination/retaliation theory under 29 U.S.C. § 2615(a)(2).[2] Section 2615(a)(1) makes it unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. Section 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Although the statute does not expressly state as much, the Sixth Circuit has held that "the FMLA also affords employees protection in the event they suffer retaliation or discrimination for exercising their rights under the FMLA." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 403 (6th Cir. 2003). Specifically, "[a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave," nor can they "use the taking of FMLA leave as a negative factor in employment actions." *Id.* (quoting 29 C.F.R. § 825.220(c)). "This prohibition includes retaliatory discharge for taking leave." *Id.*; *see also Marshall v. The Rawlings Co.*, 854 F.3d 368, 376 (6th Cir. 2017).

To establish willfulness, a plaintiff must prove that the defendant "act[ed] with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). Following the Supreme Court's decisions in *Iqbal* and *Twombly*, the Sixth Circuit has recognized that, to adequately plead willfulness, "a plaintiff must do more than make the conclusory assertion that a defendant acted willfully." *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014). Although, under Rule 9(b), "conditions of a person's mind may be alleged generally, 'the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation

---

[2] Not at issue here is a second substantive provision prohibiting retaliation against an employee for filing an FMLA charge, giving or planning to give information in an FMLA-related inquiry or proceeding, or testifying or offering to testify in such a proceeding. 29 U.S.C. § 2615(b).

plausible on its face.'" *Id.* (quoting *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (some internal quotation marks omitted).

In the FAC, Schaneville alleges that he requested and was granted leave under the FMLA from August 4–15, 2018. (Doc. No. 34-1 ¶ 62.) He alleges that, following that leave, Publix "willfully refused to provide Mr. Schaneville required notices of his FMLA rights to, among other things, intermittent leave, despite the need evidenced by his requests for reasonable accommodation." (*Id.* ¶ 63.) This reference to "willful" behavior is insufficient under *Iqbal* and *Katoula*, as the plaintiff does not allege any actual facts to support a conclusion that the defendant acted willfully in failing to provide information to which he claims he was entitled. The plaintiff actually does not respond to the defendant's argument that he does not allege sufficient facts to demonstrate a willful interference with Schaneville's exercise of rights under the FMLA based on these allegations.

However, the FAC goes on to assert that Publix "willfully retaliated against and discharged [Schaneville] for requesting and exercising medical leave, in violation of the FMLA." (*Id.* ¶ 64.) The defendant does not claim that the FAC fails to adequately allege FMLA retaliation; in fact, Publix does not address the retaliation claim at all. "[R]etaliation automatically includes willfulness." *Block v. Sears Roebuck & Co.*, No. 07-15323, 2009 WL 36483, at *4 (E.D. Mich. Jan. 6, 2009) (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 754 (6th Cir. 1992)); *see also Chandler v. Meetings & Events Int'l, Inc.*, No. 3:13-cv-200-WGH-WTL, 2015 WL 8675225 , at *4 (S.D. Ind. Dec. 11, 2015) ("[A] finding of retaliation is inherently a finding of willfulness."). *Accord Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498–99 (6th Cir. 2014) (dismissing FMLA interference claim based on the plaintiff's failure to allege facts showing willfulness, but

distinguishing between an interference and a retaliation claim and implying that retaliation would be willful activity).

The court finds that the FMLA retaliation claim based on termination in retaliation for exercising FMLA leave would be subject to the three-year statute of limitations in 29 U.S.C. § 2617(c)(2) and, therefore, would not be time-barred. The amendment of the Complaint to add this claim would not be futile, though a claim premised upon the defendant's alleged failure to provide Schaneville notice of the right to intermittent leave under the FMLA would be time-barred.

### C. Undue Delay

Typically, undue delay, standing alone, will not warrant the denial of a motion to amend. Rather, the Sixth Circuit has "required at least some significant showing of prejudice to deny a motion to amend based solely upon delay." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018) (quoting *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 445 (6th Cir. 2007)) (internal quotation marks omitted). "The longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Id.* (quoting *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994)).

The plaintiff here asserts that he did not unduly delay seeking to amend his pleading. He points out that the EEOC's Notice of Right to Sue was issued on August 21, 2020; the plaintiff filed his original Complaint in the United States District Court for the Northern District of Florida on October 22, 2020; and the defendant promptly filed an Answer and Motion to Transfer Venue to this judicial district, which the Florida court granted on December 2, 2020. On December 11, 2020, this court scheduled the initial case management conference for February 22, 2021, and, on December 17, 2020, Schaneville retained his current counsel to serve as lead attorney in this case. Following the filing of the defendant's unopposed motion to continue, the initial case management conference was moved to February 26, 2021.

The plaintiff states in support of his Motion for Leave to Amend that, on February 20, 2021, counsel for the plaintiff notified counsel for the defendant of the plaintiff's intention to file an amended complaint; he then forwarded a draft of the proposed amendment to defense counsel on February 25, 2021. (Doc. No. 35, at 3.) The parties discussed the matter at the initial case management conference, and defense counsel was unable to state at that time whether the defendant would oppose a motion to amend the pleading. (*Id.*) On March 30, 2021, after several inquiries by plaintiff's counsel, defense counsel gave notice that the defendant opposed the filing of the proposed FAC. (*Id.*) The plaintiff's Motion to Amend was filed on April 22, 2021, prior to the deadline. As of that date, the parties had exchanged Rule 26 initial disclosures but had not yet served written discovery or scheduled depositions. (*Id.*) Based on this course of events, the plaintiff maintains that he did not unduly delay in seeking to amend the Complaint and that the defendant cannot establish that it would be prejudiced by the proposed amendment. The plaintiff also contends that, while the ADA claims would relate back to the original filing so as to be timely, Fed. R. Civ. P. 15(c)(1)(B), there can be no dispute that a proposed amendment to add a timely FMLA retaliation claim, within the statute of limitations, would not be prejudicial or unduly delayed.

The defendant focuses on different events as relevant to the consideration of whether any delay is "undue." Although the Motion to for Leave to Amend was filed only five months after the initial Complaint, it was filed nearly two years after the EEOC Charge and almost two and one-half years after the plaintiff's discharge from Publix. The defendant asserts that this delay is "undue" and that it would be prejudiced by the proposed amendment, but it does not explain how, exactly, it would be prejudiced. It argues only that the plaintiff was, or should have been, aware of the facts underlying the proposed amendment at the time the initial Complaint was filed, "as well

as throughout the EEOC's charge process," and that the plaintiff has not offered any explanation for the delay in seeking to amend his claims. (Doc. No. 38, at 18.)

Particularly in light of the fact that the defendant has not shown that it would be prejudiced by the proposed amendment, the court finds no undue delay in the plaintiff's seeking to amend shortly after the case was transferred to this district and within the Initial Case Management Order's deadline for filing a motion to amend.

IV.    **CONCLUSION**

For the reasons set forth herein, the court will grant the Motion to Amend, while noting that any FMLA claim premised upon anything other than retaliation will be untimely. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge